EMMA REIMER *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Suffolk.    December 10, 1900. — February 27, 1901.

Present: HOLMES, C. J., KNOWLTON, BARKER, HAMMOND, & LORING, JJ.

In an action against a railroad company to recover for injuries sustained in falling from an unfinished granite staircase designed to be part of the approach to a station of the defendant to be constructed eighteen or twenty feet above the street, it appeared that the steps were laid to within three or four feet of the top; that two or three feet from the lowest step stood a large derrick of which

the boom passed over and along the steps near their outer edge extending nearly to the top; that there were piles of broken stone, a mortar bed, rubbish and other indications that work was going on there; that the plaintiff, a girl of sixteen, at about eight o'clock on a dark evening on her way with three other persons to take a train to go to a theatre, leaving the sidewalk followed a little beaten path across the street leading to the steps; that being the foremost of the party she went up the steps and fell on the other side. *Held*, that there was no evidence that the plaintiff was in the exercise of due care. Whether, had that question become material, it could have been found that there was evidence of an implied invitation from the defendant to the plaintiff to approach by the steps, as they were shown to exist with their surroundings, when she wished to take a train, *quære*.

TORT to recover for personal injuries sustained by the plaintiff in falling from an unfinished granite staircase designed to be part of the approach to a station of the defendant at Forest Hills in Boston. Writ dated December 2, 1896.

At the trial in the Superior Court, before *Hardy*, J., the plaintiff, Emma Reimer, sixteen years old at the time of the accident and by occupation a stenographer, testified that she left Norwood to go to a theatre in Boston, took an electric as far as Forest Hills, and from there intended to take a train; that she left the cars and walked along the sidewalk on Washington Street until she came to a place nearly opposite the stairs up which she went. That she crossed over and walked along a "little beaten path through the mud" that led to the steps, and when she got to the top she stood and looked around, as anybody would in an unfamiliar place; that the night was very dark and misty, and there was a drizzling rain; that she did not see anything but two lights in the distance, which she supposed was a railway station; that she took a step forward and fell into a hole. The plaintiff then described how she had come from the place where the electric car stopped, on the right hand side of Washington Street, going in a northerly direction, until nearly opposite the steps. When she crossed over from the opposite side of Washington Street, the street was muddy, as it naturally would be, and she met this path which led to the foot of the stairs, and the path was not quite so muddy as the rest of the street. There was no obstruction in the path, and there were no written notices or lanterns there. The plaintiff testified that she saw something upon the outside of the steps, but did not examine it, and most likely thought it was a rail-

ing. It ran along the outside edge of the stairs all the way up. There were four in the party, the plaintiff being in advance of the others.

On cross-examination she said: " I think we must have left Norwood somewhere round seven o'clock. When we reached Forest Hills it was round eight o'clock. We expected the theatre would begin in the neighborhood of eight o'clock or quarter before. I do not remember when we formed our intention of taking the steam cars there. I think we had decided to take the steam cars from Forest Hills. I had never been at Forest Hills station before; had never taken a train there. As a girl I lived in South Boston all my life, on Eighth Street, and went to school there; lived there all the year round. Was born there and lived there all my sixteen years. I went about as any child would, in South Boston, and saw what there was to be seen. When I got to Forest Hills I did n't have any ticket to take the train, and none of my party did, as I know of."

The substance of the evidence in regard to the condition and surroundings of the unfinished stairway is stated in the opinion of the court.

At the close of the evidence, the defendant asked the judge to rule that upon the evidence the plaintiff could not recover, and the judge so ruled.

By direction of the judge the jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*J. J. Feely*, for the plaintiff.

*C. F. Choate, Jr.*, for the defendant.

KNOWLTON, J. The plaintiff was injured near the defendant's station at Forest Hills. The defendant was then engaged, under the authority of the statute, in elevating its railroad tracks from Boston to a point beyond Forest Hills. The railroad had been elevated at this point eighteen or twenty feet. The old station had been on the east side of the tracks, on a level with Washington Street, and had never been approached by going up a flight of steps. A new station had been finished on the west side of the railroad, approached by two flights of steps to which there was access from adjacent streets. Work was going on in the construction of a wall on the east side of the railroad, preparatory to the construction of a station on that

side.  A flight of stone steps was in process of construction, designed to lead to the top of the wall at a considerable distance from the site of the station, and the steps were laid to within three or four feet of the top.  The accident happened at a little before eight o'clock in the evening.  Two or three feet out from the lower step a large derrick was set, operated by a steam engine near by, and the boom, eight or ten inches square, was left resting over the steps near the outer edge of them, extending nearly to the top.  There was an electric arc light directly across the street from the foot of the steps, which lighted the steps considerably.  Many men were employed there daily, and in close proximity to the steps were piles of broken stone, a mortar bed, rubbish, and other evidences that work was going on there.  On the opposite side of Washington Street there was a paved walk, and there was no cross walk or flagging or constructed path across the street near the steps.  All this was uncontradicted.

The plaintiff was sixteen years of age, and by occupation a stenographer.  She had lived in South Boston all her life, and had been accustomed to go about and see those things which are visible to ordinary observers.  She and her sister and her sister's husband and another young man came by an electric car from Norwood to Forest Hills, on their way to Boston, where they intended to visit a theatre.  The evidence tends to show that they thought they were late, and were hastening to take a train on the defendant's railroad.  She testified that the street opposite to the steps was all muddy, and that there was a little beaten path there, made by walking — a "little beaten path through the mud."  It was agreed that after crossing the street the distance to the steps was twenty-five feet.  She testified further that she looked and saw the stairs in front of her, but saw nothing else.  There was no constructed path there that looked like station grounds ; there was no station platform constructed, nor any lamps such as you ordinarily see on a station platform.  She described something that ran up the steps, about six or eight inches in diameter.  " It extended along the side of the stairs, way up from the bottom to the top.  It was setting up a little from the steps, perhaps three or four feet."  She did not know what it was, but said she thought it was a hand rail.

The unfinished wall had been constructed to about the same height as the steps. The plaintiff, who was the foremost of the party, went up to the top of the steps, and fell a considerable distance on the other side of the wall.

She was not a passenger on the railroad, for she had not entered into a contract with the defendant, nor reached a place intended to be used by passengers, either in waiting for trains or in approaching the station. It is difficult to see how there was any evidence of negligence on the part of the defendant. The defendant owed her no duty, unless there was an implied invitation to her to approach by that way when she wished to take a train. The unfinished steps were the only feature of the situation which looked to the possibility of an approach in that place, and when they were taken in connection with their surroundings, it is hard to discover any evidence of an invitation on the part of the defendant to pass over them. But without deciding the question whether there was any evidence of negligence on the part of the defendant, we are of opinion that the plaintiff introduced no evidence of due care on her own part. She never had been in Forest Hills before, and although there were stores on the easterly side of Washington Street and people on the sidewalk, she made no inquiries as to how to get to the station, and did not look about to see if there was any other way to go there. She did not see any building there that looked like a station. She did not see any sign reading " Forest Hills Station." She did not see any persons going before her in that direction, nor any persons coming from that direction. She saw that there was no crosswalk leading across the street, only a beaten path through the mud, and that there was no constructed walk from the street to the steps, such as is usually found on station grounds. According to the testimony of everybody, she must have passed within two or three feet of the large derrick which stood by the foot of the steps, and she passed up alongside of the boom of the derrick, but she made no examination to see what it was. Although the night was dark, she testified that there was an arc light across the street opposite to the steps, and there was testimony of many witnesses that it lighted up the place about the steps. There was no evidence that either of the plaintiff's companions had any knowledge, or gave

her any information, which should have made her believe that this was a way prepared for the use of passengers. Lawrence Tisdale, the only one of them who had ever been there before, had known for two or three months that they were making changes there and raising the track. He saw the derrick, and when they were going up the steps he did not suppose they were going to the old station. He did not see any station or any building.

We are of opinion that there was no evidence which would warrant the jury in finding that the plaintiff was in the exercise of due care at the time of the accident.

*Exceptions overruled.*